UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| PRATEEK DAVE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 08-0856 (RMU) |
| | : | | |
| v. | : | Document Nos.: | 2, 5 |
| | : | | |
| CATHY LANIER *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

GRANTING DEFENDANT LANIER'S MOTION TO DISMISS;
ORDERING FURTHER BRIEFING ON THE ADA AND REHABILITATION ACT CLAIMS; DENYING
DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS THE TITLE VII CLAIM

### I. INTRODUCTION

This matter comes before the court on the defendant's motion to dismiss.[1] The plaintiff, a former cadet at the District of Columbia Metropolitan Police Department Institute of Police Science ("IPS"), alleges discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; the Rehabilitation Act, 29 U.S.C. §§ 791 *et seq.*; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* The defendant, the District of Columbia, moves to dismiss the ADA and Rehabilitation Act claims under Federal Rule of Civil Procedure 12(b)(6) for failure to sufficiently state a claim of disability discrimination. The defendant further moves to dismiss the Title VII retaliation claim under Rule 12(b)(6) for failure to state a claim. In light of recent changes to the ADA, the court orders further briefing on the plaintiff's ADA and Rehabilitation Act claims. And because, at this stage in the proceedings, the

---

[1] Defendant Cathy Lanier has also moved to dismiss. Def. Lanier's Mot. to Dismiss. Because the plaintiff has stated that he does not oppose Defendant Lanier's motion to dismiss, the court grants it. *See* Pl.'s Resp. Accordingly, for the purposes of this Memorandum Opinion, "the defendant" shall refer to the District of Columbia.

plaintiff has sufficiently pled his Title VII retaliation claim, the court denies the defendant's motion to dismiss as to this claim.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The plaintiff, an Indian American male, was a cadet at IPS from September 2004 until September 2006.  Compl. ¶¶ 5, 6.  The plaintiff alleges that during a training exercise in November 2004, a trainer of Hispanic descent pushed him down a hill, causing injury to his shoulder.  *Id.* ¶ 6.  Believing that the trainer's conduct was motivated by discriminatory animus, the plaintiff complained about the incident to the defendant.  *Id.*  Following the incident, the plaintiff was placed on limited duty or sick leave for five months to receive treatment for his shoulder, which included Cortisone shots but no surgery.  *Id.*

The plaintiff alleges that after he returned to work, the defendant retaliated against him for reporting the incident.  *Id.* ¶ 7.  The alleged retaliation included giving him only academic work supplemented by physical training, training him with a lower-level class, making sarcastic remarks about his abilities and withholding specialized training necessary for graduation from IPS.  *Id.*  As a result of the repetitious physical training, the plaintiff developed asthma, resulting in an additional one to two months of sick leave.  *Id.*  While cadets normally graduate from the academy in six months, the plaintiff spent two years at the academy and did not graduate.  *Id.* ¶ 8. In September 2006, the defendant issued the plaintiff a letter of termination from IPS.  *Id.* ¶ 9. After his termination, the plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), which subsequently issued him a right to sue letter.  *Id.* ¶ 10.  The plaintiff filed the instant complaint on May 19, 2008.  *See generally* Compl.  The defendant has

moved to dismiss, arguing that the plaintiff fails to sufficiently plead any of his claims. *See generally* Def.'s Mot. The plaintiff opposes the motion. *See generally* Pl.'s Opp'n. The court now turns to the parties' arguments.

### III.  ANALYSIS

#### A.  Legal Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, the plaintiff must allege "any set of facts consistent with the allegations." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-56, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief");

*Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (affirming that "a complaint needs some information about the circumstances giving rise to the claims"). While these facts must "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" a complaint "does not need detailed factual allegations." *Twombly*, 127 S. Ct. at 1964, 1966. In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.

**B. The Court Orders Further Briefing on the ADA and Rehabilitation Act Claims**

In September 2008, Congress passed the ADA Amendments Act of 2008 ("the Act"), which establishes that past Supreme Court decisions have too narrowly defined "the broad scope of protection intended to be afforded by the ADA." Pub. L. No. 110-25, 122 Stat. 3553 (effective Jan. 1, 2009). More specifically, the Act expressly disavows the Supreme Court's interpretation of the ADA in two leading cases, *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002). *Id.* (determining that *Toyota Motor Manufacturing* established a more limited interpretation of "substantially limits" and "major life activity" than Congress intended and that *Sutton* too narrowly limited the interpretation of "regarded as" disabled and improperly weighed the impact

of mitigating measures on the determination of whether an individual is disabled). The Act, therefore, alters the legal landscape applicable in the instant action. In light of these changes, the court orders further briefing by the parties on the plaintiff's ADA and Rehabilitation Act claims.

**C. The Court Denies the Defendant's Motion to Dismiss the Title VII Retaliation Claim**

### 1. Legal Standard for a Retaliation Claim

To prevail on a claim of retaliation, a plaintiff must follow the *McDonnell Douglas* framework. *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) (applying the *McDonnell Douglas* framework to a Title VII retaliation claim); *Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43, 49-50 & n.8 (D.D.C. 2003) (applying the *McDonnell Douglas* framework to a Rehabilitation Act retaliation claim). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of [retaliation]. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, [non-retaliatory] reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [retaliation] . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally [retaliated] against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-

69 (2006); *see also Scott v. Kempthorne*, 2006 WL 1980219, at *3 (10th Cir. July 17, 2006).  The plaintiff's burden is not great: he "merely needs to establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

If the employer successfully presents a legitimate, non-retaliatory reason for its actions, "the presumption raised by the prima facie is rebutted and drops from the case." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal citation omitted); *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008) (noting that "the prima facie case is a largely unnecessary sideshow").  Upon such a showing by the defendant, the district court need resolve only one question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-[retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee on the basis of race, color, religion, sex, or national origin?" *Brady*, 520 F.3d at 494.  In other words, did the plaintiff "show *both* that the reason was false, *and* that . . . [retaliation] was the real reason." *Weber*, 494 F.3d at 186 (alterations in original and internal quotations omitted) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515).  The court must consider whether the jury could "infer [retaliation] from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were [retaliatory] or that the non-[retaliatory] justification was pretextual." *Smith v. District of Columbia*, 430 F.3d 450, 455 (2005) (quoting *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005)).  The court should assess the plaintiff's challenge to the employer's explanation in light of the totality of the circumstances of the case. *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C. Cir. 1998).

The strength of the plaintiff's prima facie case, especially the existence of a causal

connection, can be a significant factor in his attempt to rebut the defendant's legitimate non-retaliatory reason for the adverse action. *See Aka,* 156 F.3d at 1289 n.4 (stating that "a *prima facie* case that strongly suggests intentional discrimination may be enough by itself to survive summary judgment"); *Laurent v. Bureau of Rehab., Inc.*, 544 F. Supp. 2d 17, 23 n.5 (D.D.C. 2008) (holding that the plaintiff cannot establish pretext because "she is unable to show any causal connection"); *Meadows v. Mukasey*, 2008 WL 2211434, at *5-6 (D.D.C. May 29, 2008) (holding that the plaintiff demonstrated pretext in part by establishing a causal connection). The plaintiff may establish a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the [retaliatory] personnel action took place shortly after that activity." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)); *accord Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that the temporal connection must be "very close": a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and a 20-month period suggests "no causality at all").

### 2. The Plaintiff Has Pled a Legally Cognizable Claim of Retaliation

The plaintiff alleges that his trainer "treated him in a discriminatory manner" by pushing him down a hill during a training exercise in November 2004. Compl. ¶¶ 6, 18. The plaintiff further asserts that when he complained about the trainer's discriminatory conduct, the defendant retaliated against him by characterizing him as poor cadet, refusing to advance him at the academy, subjecting him to disparate conditions and ultimately terminating him from the police academy. *Id.* ¶ 22. The defendant moves to dismiss the Title VII claims on the grounds that the action was not adverse and, in any case, that there is no temporal connection between the

plaintiff's complaint and the defendant's allegedly retaliatory conduct. *See generally* Def.'s Mot. The court addresses each of these arguments in turn.

The defendant first avers that the plaintiff fails to state that any of the allegedly retaliatory conduct constituted an adverse personnel action. Def.'s Mot. at 9. The plaintiff, on the other hand, maintains that he has met his burden at this stage of the proceedings by alleging that the defendant engaged in adverse employment actions against him. Pl.'s Opp'n at 5-7. An "'adverse employment action' is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Douglas v. Donovan*, 2009 WL 673569, at *1 (D.C. Cir. Mar. 17, 2009) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). Actions short of firing, including "[d]ischarge, demotion, or undesirable reassignment," can constitute adverse employment actions. *Amiri v. Stoladi Prop. Group*, 407 F. Supp. 2d 119, 125 (D.D.C. 2005) (citing *Burlington Indus.*, 524 U.S. at 765).

As a preliminary matter, the court notes that in the retaliation context, the term "adverse action" "encompass[es] a broader sweep of actions than those in a pure discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008). Thus, "[r]etaliation claims are 'not limited to discriminatory actions that affect the terms and conditions of employment' and may extend to harms that are not workplace-related or employment-related so long as 'a reasonable employee would have found the challenged action materially adverse.'" *Id.* (quoting *Burlington N.*, 548 U.S. at 64, 68). The plaintiff here alleges that the defendant created a change in his employment status by placing him in a lower-level training class, denying him training

opportunities necessary for graduation and ultimately firing him. Compl. ¶¶ 7-9, 18. These acts may fall under the categories established by *Burlington Industries*, including failure to promote, reassignment with significantly different responsibilities and firing. *See Burlington Indus.*, 524 U.S. at 761.[2]

The cases that the defendant cites regarding whether denial of training may be considered an adverse employment action are inapposite for two reasons: first, they occurred at the summary judgment stage or beyond, after the plaintiffs had been allowed to develop their claims through the discovery process. *See* Def.'s Mot. at 11-12. And second, because the plaintiff in the instant action was employed as a cadet, training opportunities were more central to his professional advancement than they are in a typical employment scenario. *Coleman v. District of Columbia*, 2006 WL 2434926, at *6 (D.D.C. Aug. 22, 2006) (citing *Burlington N.*, 548 U.S. at 68) (denying in part the defendant's motion for summary judgment because the plaintiff, a fire department cadet, alleged that the defendant retaliated against her by denying her training classes and subjecting her to unwarranted discipline). Thus, the court determines that the acts alleged by the plaintiff may be considered "adverse" and therefore rejects the defendant's contention to the contrary.

In addition, the defendant argues that there is no temporal proximity between the plaintiff's report of the incident with the trainer and his termination nearly two years later. Def.'s Mot. at 7-9. The plaintiff counters that he has pled facts from which causation can be inferred. Pl.'s Opp'n at 5-7. To establish a causal connection, an employer must have had knowledge of

---

[2]   This Circuit recently noted that at the summary judgment stage, employment actions of this type would be "conclusively presumed to be adverse employment actions, even if any alleged harm is speculative." *Douglas v. Donovan*, 2009 WL 673569, at *2 (D.C. Cir. Mar. 17, 2009).

the employee's protected act and must have taken an adverse personnel action as a result of the protected act. *Cones*, 199 F.3d at 521. The defendant cites several cases in which courts have determined that a time lapse of even a few months between the protected activity and the alleged retaliatory act failed to give rise to an inference of causation. Def.'s Mot. at 7-9. But here, while the plaintiff does not specify the exact interval between the protected activity and the allegedly retaliatory acts, drawing all reasonable inferences in the plaintiff's favor, the complaint suggests that these adverse acts began soon after he returned from sick leave and occurred regularly until he was ultimately terminated. Compl. ¶¶ 6-9; Pl.'s Opp'n at 5 (claiming that after the incident the defendant gave the plaintiff only academic work, subjected him to rigorous physical training, required him to train with a lower class, made sarcastic remarks about his abilities, prevented him from obtaining specialized training necessary for graduation and ultimately terminated him from the academy).

Furthermore, temporal proximity, though often an indicator of causation, is not a required element of a retaliation claim, particularly at this stage of the proceedings. *Swierkiewicz*, 534 U.S. at 511-14 (holding that the plaintiff need not plead all elements of his prima facie case in the complaint); *Beckham v. Nat'l R.R. Passenger Corp.*, 590 F. Supp. 2d 82, 89 (D.D.C. 2008) (denying the defendant's motion to dismiss based on lack of temporal proximity because the plaintiff had satisfied her burden at that early stage of the proceedings); *see also Beard v. Preston*, 576 F. Supp. 2d 93, 105-06 (D.D.C. 2007) (stating that a lack of temporal proximity alone does not mandate a grant of summary judgment). Accordingly, even if the court were to conclude that the plaintiff had failed to sufficiently plead temporal proximity, the plaintiff would still meet the burden necessary to overcome a motion to dismiss. *Rochon v. Gonzalez*, 438 F.3d

1211, 1220 (D.C. Cir. 2000) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000) (observing that "in order to survive a motion to dismiss, all [the] complaint has to say . . . is '[the] [defendant] retaliated against me because I engaged in protected activity'")); *Vance v. Chao*, 496 F. Supp. 2d 182, 187 (D.D.C. 2007) (holding that "[a]t this early stage of the proceedings, plaintiff can meet her prima facie burden of causation simply by alleging that the adverse actions were caused by her protected activity"). As a result, the court holds that the plaintiff has made out a legally cognizable claim of retaliation by contending that he engaged in a protected activity by reporting the trainer's allegedly discriminatory conduct and that in response to his complaint, the defendant retaliated against him by subjecting him to materially adverse actions. *See Burlington N.*, 548 U.S. at 67-69. Accordingly, the court denies the defendant's motion to dismiss the plaintiff's Title VII retaliation claim.

## IV. CONCLUSION

For the foregoing reasons, the court grants defendant Lanier's motion to dismiss and denies defendant District of Columbia's motion to dismiss the plaintiff's Title VII claim. Further, in light of the ADA Amendments Act of 2008, the court orders further briefing on the plaintiff's ADA and Rehabilitation Act claims against defendant District of Columbia. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 27th day of March, 2009.

RICARDO M. URBINA
United States District Judge