;**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PRATEEK DAVE, | . | |
| | . | |
| Plaintiff, | . | |
| | . | Civil Action No.:   08-cv-0856 (RC) |
| v. | . | |
| | . | |
| DISTRICT OF COLUMBIA | . | |
| METROPOLITAN POLICE DEPARTMENT, | . | Re Document Nos.:  37, 47 |
| | . | |
| Defendant. | . | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

Plaintiff, Prateek Dave, is an Indian-American former cadet with the District of

Columbia's Metropolitan Police Department ("MPD").  His complaint alleged that MPD failed

to advance him and, ultimately, terminated his employment based on his race and national origin

and in retaliation for his prior complaints of discrimination.  Additionally, plaintiff alleged that

his termination violated the due process clause of the Fifth Amendment and 42 U.S.C. § 1983

because he was not given adequate notice or opportunity to be heard.  By order of November 9,

2012, the Court dismissed the plaintiff's discrimination and retaliation claims but requested

supplemental briefing on the plaintiff's liberty interest due process claim.  MPD has now

renewed its motion for summary judgment on that claim and it is ripe for consideration.  For the

reasons set forth below, that motion is GRANTED and this case is dismissed with prejudice.

1

## II.  FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

The facts and procedural history of this case are set forth in this Court's opinion of November 9, 2012, and will not be repeated here.  In short, plaintiff's remaining claim is that he had a liberty interest in his employment and the manner in which MPD terminated him without notice or opportunity to be heard stigmatized him and damaged his reputation and foreclosed him from taking advantage of future employment opportunities.[1]  The facts applicable to this claim are set forth below.

Plaintiff's termination letter did not state the reason for his termination. [Docket 37, MSJ, Exh. H at DC 2].  Although plaintiff was terminated for misconduct, there is no evidence the District made this information public.  In fact, plaintiff claims that, until this litigation, he was unaware that the termination was based on his misconduct. [Docket No. 42 at 8-9]. Since his termination by MPD, plaintiff has not sought employment with another police force because he believes his physical injuries render him incapable of performing the job.  Dave Depo. at 74-76. It has been over six years since the termination.

## III.  ANALYSIS

### A.  Legal Standard for a Fifth Amendment Claim

The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. V.  In order to establish a Fifth Amendment deprivation of liberty interest claim based on termination from

---

[1]     Plaintiff requests a number of forms of relief including reinstatement and backpay. Amended Complaint at Counts III & IV.  However, it appears that his only available remedy may be a name-clearing hearing.  *Doe v. Dep't of Justice*, 753 F.2d 1092, 1102 (D.C. Cir. 1985) ("Doe's liberty interest implicates her post-employment reputation rather than any right to continued employment with the Department; if Doe can demonstrate that the DOJ harmed her professional standing without providing the proper procedural protections, her remedy is a 'name-clearing' hearing.").

employment, the Court must engage in the "familiar two-part inquiry."  A plaintiff must first demonstrate that he was deprived of a protected property or liberty interest and, if he was, the Court must decide whether plaintiff received the process he was due.  *Orange v. District of Columbia*, 59 F.3d 1267, 1274 (D.C. Cir. 1995) (*citing Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)).  The Court has previously found that, as a probationary employee, plaintiff did not have a protected property interest in continued employment at MPD.  Thus, in this opinion, the Court only assesses whether plaintiff had a protected liberty interest.

Under the precedents of the Supreme Court and the D.C. Circuit, a government employee's due process rights are implicated when a firing or demotion is coupled with a defamatory official statement, *see Mosrie v. Barry*, 718 F.2d 1151, 1161 (D.C. Cir. 1983), or when an adverse employment action (considered somewhat more broadly) is combined with "a stigma or other disability that foreclose[s] [the plaintiff's] freedom to take advantage of other employment opportunities," *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998) *(quoting Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)).  The first type of claim is known as a "reputation-plus" claim; "it presumably rests on the fact that official criticism will carry much more weight if the person criticized is at the same time demoted or fired."  *Id.*; *see also Paul v. Davis*, 424 U.S. 693, 710 (1976) (reading *Roth* to hold that "defaming an individual in the course of declining to rehire him could entitle the person to notice and an opportunity to be heard as to the defamation," but not to suggest that "a defamation perpetrated by a government official but unconnected with any refusal to rehire would be actionable" as a due process violation).

The second type of claim goes by the name of "stigma or disability," because "it does not depend on official speech, but on a continuing stigma or disability arising from official action."  *O'Donnell*, 148 F.3d at 1140.  A plaintiff may not "sue purely on the basis of the stigma

associated with being fired; the Court found in *Paul v. Davis*, that stigma alone is not actionable, without a showing that a 'right or status previously recognized by state law' has been 'distinctly altered or extinguished.'"   *Id.* at 1139 (*quoting Paul*, 424 U.S. at 711) (internal citation omitted).

### B.  The Plaintiff's Reputation-Plus Claim

Plaintiff has alleged a "reputation plus" claim by alleging official defamation (*e.g.*, that he was terminated for misconduct) in conjunction with his termination.  *See*, *e.g.*, *Aguirre v. SEC*, 671 F. Supp. 2d 113, 119 (D.D.C. 2009).  Such a claim requires some official action because "'government defamation' alone is 'insufficient to create a liberty interest' under the Due Process Clause."  *Id.* (quoting *Orange*, 59 F.3d at 1274).  There is no dispute that being terminated qualifies as the necessary official action.  Neither is it disputed that the allegations that plaintiff was terminated for misconduct, rather than for poor performance or for no reason at all, qualify as sufficiently defamatory to implicate a liberty interest.

But nearly all of the courts in this Circuit to have considered the issue, have held that, in order for plaintiff to posses a liberty interest, the government must have publicly disclosed the defamatory information.  *United States Information Agency v. KRC*, 905 F.2d 389, 398 (D.C. Cir. 1990) (no liberty interest found, in part, because plaintiff did not assert that the government had disseminated the cause of his termination); *Doe v. Cheney*, 885 F.2d 898, 910 (D.C. Cir. 1989) ("NSA did not disseminate publicly any of the information that it used in making its decision vis-a-vis [plaintiff]).  By contrast, NSA disclosed the information only to other federal agencies with whom NSA tried to place [plaintiff], with [his] consent . . . . Restricted disclosure of such material to other federal agencies, with clear limits on further distribution, is not stigmatizing and does not infringe upon constitutional liberty interests."); *Harrison v. Bowen*, 815 F.2d 1505, 1519 (D.C. Cir. 1987) ("In Harrison's case, however, there was no publication of

the reasons for her dismissal, and thus no stigmatic harm."); *McCormick v. D.C.*, – F. Supp. 2d –, 2012 WL 5194073, at *5 (D.D.C.) (no claim absent "public disclosure" which requires that the government make "public" a stigmatizing allegation); *De Sousa v. Dep't of State*, 840 F. Supp. 2d 92, 110 (D.D.C. 2012) (reputation-plus claim fails because government never spread derogatory information about plaintiff to any third party).  Absent this lawsuit, there is no evidence that MPD publicly disclosed the fact that plaintiff was terminated for alleged misconduct.

Plaintiff argues, however, that he can establish a reputation plus claim because MPD maintains the allegations of misconduct in its files and may some day disclose them to future potential employers.  Pl.'s Opp. at 4.  There is some older Circuit law that supports this argument.  *See Doe v. Department of Justice*, 753 F.2d 1092, 1113 n. 24 (D.C. Cir.  1985) ("The 'public disclosure' requirement would also be satisfied if the Department placed Doe's termination memorandum in her personnel file and made that file available, even on a limited basis, to prospective employers or government officials."); *Mazaleski v. Treusell*, 562 F.2d 701,712-14 (D.C. Cir. 1977) (requiring public disclosure but indicating that records kept in files that might be provided to prospective employers pursuant to agency's rule might qualify). However, in this case, there is no evidence that MPD has provided the allegations of misconduct to any prospective employer.  Certainly, plaintiff has not alleged that his current employer received such information.  Neither has plaintiff alleged that the District's rules or regulations allow for such dissemination absent his consent.  *See generally* DC ST 1-631.01 ("All official personnel records of the District government shall be established, maintained, and disposed of in a manner designed to ensure the greatest degree of applicant or employee privacy while providing adequate, necessary, and complete information for the District to carry out its

responsibilities under this chapter."). Accordingly, this Court follows the Circuit's more recent

pronouncements in *KRC*, *Cheney*, and *Harrison* that require public dissemination. In fact, in

*Cheney*, the Circuit further authorized limited disclosures to other agencies without considering

them public disclosures. Because in this case plaintiff has failed to identify any public

disclosures and has not articulated any non-speculative likelihood that information in his

personnel files will be disclosed to prospective future employers without his consent, his

reputation plus liberty interest claim fails.

### C.  The Plaintiff's Stigma or Disability Claim

Plaintiff also makes a stigma or disability claim arguing that his termination from MPD has

resulted in a stigma or other disability that forecloses his ability to pursue his chosen career in

law enforcement. In response, MPD argues that: plaintiff has not been excluded from his chosen

profession because his current security guard position is within his chosen profession;[2] plaintiff

cannot establish any sort of exclusion because he has never pursued a law enforcement position

since his termination; and, plaintiff was not excluded from his chosen field of law enforcement

because he never established himself in that field.[3] Because plaintiff never pursued a law

enforcement position following his termination, the Court finds that his stigma or disability claim

fails because he cannot establish that he is broadly foreclosed from pursuing his chosen

profession of law enforcement.

A stigma or disability claim "turns on the combination of an adverse employment action

and 'a stigma or other disability that foreclosed [the plaintiff's] freedom to take advantage of

---

[2]     Because of differences in pay, benefits, prestige and responsibilities, the Court agrees
with plaintiff that a security guard position, even if armed, is not equivalent to a police officer
position for purposes of determining whether plaintiff has obtained employment in his chosen
profession.
[3]     This is an intriguing argument but not strongly supported by existing case law. Because
the Court need not reach this argument to resolve the motion, it does not address it.

other employment opportunities. . . .'" *O'Donnell*, 148 F.3d 1140 *(*quoting *Roth*, 408 U.S. at

573). It differs from a reputation plus claim "in that it does not depend on official speech, but on

a continuing stigma or disability arising from official action." *Id.* The requisite government

action can be either a formal preclusion or a more informal one that has a broad preclusive effect.

Thus, the "government action precluding a litigant from future employment opportunities will

infringe upon his constitutionally protected liberty interests only when that preclusion is either

sufficiently formal or sufficiently broad." *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1506

(D.C. Cir. 1995).

    If MPD's "action formally or automatically excludes [plaintiff] from work at [MPD, the

District of Columbia government, or other government agencies], that action changes [his]

formal legal status and thus implicates a liberty interest." *Kartseva v. State Dep't*, 37 F.3d 1524,

1528 (D.C. Cir. 1995). There is no allegation that MPD has formally barred plaintiff from future

employment either within MPD or, more broadly, with the District government. And MPD, of

course, has no authority to bar plaintiff from employment with other State or local police forces

or the federal government. *See Mosrie*, 718 F.2d at 1162 ("Financial loss and loss of some

employment opportunities do not, therefore, amount to an alteration of a legal right. That must

be so even if some of the job opportunities lost are for public jobs, at least when as in this case,

the stigmatizing government has no legal authority to alter legal rights to seek employment with

another government.").

    Alternatively, plaintiff's stigma or disability claim can succeed if MPD's actions did not

have the *binding* effect, but nevertheless had the *broad* effect of largely precluding plaintiff from

pursuing his chosen career in law enforcement. *Kartseva*, 37 F.3d at 1528. "On the other hand,

if [plaintiff] has merely lost one position in [his] profession but is not foreclosed from reentering

7

the field, [he] has not carried [his] burden." *Id.* at 1529.[4]   Given the Circuit's language in *Mosrie*

set forth above, it is doubtful that the silent actions of a single agency within a single municipal

government can have a sufficiently broad effect to alter an individual's legal rights to such a

degree as to implicate a liberty interest.   But the Court need not decide that issue because

plaintiff never tested the waters to determine whether a broad preclusive effect inhibited his job

prospects.  *See Orange*, 59 F.3d at 1275 (because, since plaintiffs' dismissals, neither plaintiff

sought a position in the government, they failed to show that the government's action foreclosed

government employment opportunities).   Here too, since his termination six years ago, plaintiff

has never sought other law enforcement positions because he believed his physical injuries

rendered him incapable of performing the job.  Dave Depo. at 74-76.   Consequently, his stigma

or disability claim fails as well.[5]

## IV.  CONCLUSION

For the foregoing reasons, defendant's renewed motion for summary judgment is granted

and plaintiff's Fifth Amendment and 42 U.S.C. §§ 1983 due process claims based on a purported

---

[4]   *Kartseva* involved a Russian translator and the possible broad effects blackballing by the State Department might have in that narrow field.  Law enforcement is not as narrow a field as Russian translation and MPD would not have as dominant a role in the field of law enforcement generally, as the State Department would have in careers requiring Russian translation.

[5]   Plaintiff relies upon *McCormick*, 2012 WL 5194073, at *4 (D.D.C. Oct. 22, 2012) for the proposition that some terminations "self-evidently preclude" individuals from their chosen profession.  Pl.'s Opp. at 8.  Even if that is a correct statement of the law, this case is easily distinguishable.  *McCormick* involved a Supervisory Correctional Officer who was terminated for allegedly hitting a restrained inmate.  *Id.*  A long time correctional employee might have a hard time explaining why he was terminated.  But when MPD terminated plaintiff during his probationary period, it gave no reason for the dismissal.  In fact, until this action, plaintiff claims that he was never told that he was terminated for misconduct.  A police cadet can be released during his/her probationary period for a number of reasons other than misconduct including inability to meet the academic or physical requirements.  But these types of failures can be remedied through more intense studying or better physical conditioning.  As such, a termination during a probationary period for no stated reason does not "self-evidently preclude" plaintiff from pursuing his chosen profession.  In fact, plaintiff obtained his MPD position after being released from the Capitol Police during his probationary period.  Dave Depo. at 88.

liberty interest are dismissed.  Because all of plaintiff's claims have now been dismissed, this case is dismissed with prejudice.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 1st day of March, 2013.

RUDOLPH CONTRERAS
United States District Judge